**Affirmed and Opinion filed September 15, 2020.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-19-00122-CR

**MICHAEL SHANE DOWLING, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 434th Judicial District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 17-DCR-076285A**

## OPINION

Appellant Michael Shane Dowling appeals his conviction for family violence assault by impeding breath or circulation. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(B). He contends (1) "the evidence is factually insufficient to prove assault family violence impeding breath or circulation"; and (2) "the pen packet was not properly attested to by the custodian of records." We affirm.

## BACKGROUND

Appellant and Complainant met on a dating website in late 2015. In February 2016, Appellant flew from Florida to Texas to meet Complainant in person. They started dating and Appellant ended up moving in with Complainant. Later, Appellant moved to Rosenberg, Texas to the Value Inn hotel.

On December 31, 2016, Complainant stayed with Appellant at the Value Inn hotel. They got into an argument when Complainant found women's underwear that was not hers in Appellant's drawer. At some point, Appellant threw Complainant on the ground. Appellant then grabbed her by the hair, dragged her, picked her up from the ground by her hair, and threw her on top of the bed. Appellant and Complainant fought on the bed. Complainant started to push Appellant off, but he pulled her hair and put his hands around her neck. He applied pressure to her neck and she had difficulty breathing.

Complainant managed to fight Appellant off and went to the kitchen to get a knife. Appellant took the knife away from Complainant and threw her back on the bed. He climbed on top of her, put his hands on her neck, and applied pressure to her neck and throat. Complainant felt pain and had difficulty breathing. She could not scream or breathe because Appellant grabbed her neck so tightly. Appellant also pushed down on Complainant's mouth, so that her partials[1] came loose and cut her mouth. Appellant took the brackets out of her mouth and threw them on the floor. As Appellant applied pressure to her neck, Complainant could not breathe, urinated on herself, and felt like she was fading away and everything was going dark. Complainant tried to call the police but Appellant pulled the landline out of the wall and also took her cell phone from her. However, someone else called the police, and Appellant was arrested for assault.

---

[1] From context, it appears Complainant was referring to partial dentures.

2

A jury convicted Appellant of third-degree felony "assault family violence impeding breath or circulation." After a PSI report was prepared, the trial court held a sentencing hearing and assessed Appellant's punishment at 25 years' confinement. Appellant filed a timely appeal.

ANALYSIS

## I. Sufficiency of the Evidence

In his first issue, "Appellant contends that the evidence is factually insufficient to prove assault family violence impeding breath or circulation." Specifically, Appellant argues the evidence is insufficient to support his conviction because (1) "Complainant's normal breathing was not impeded as she testified that she yelled at Appellant and Ofc. Manriquez testified that the dispatch call stated shouts from the room as reason for the disturbance call"; and (2) "Complainant did not suffer any damage or injuries to her neck, throat, or jaw."

We address Appellant's sufficiency challenge under a single standard for evaluating legal sufficiency of the evidence to support a finding required to be proven beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 902-03 (Tex. Crim. App. 2010) (plurality opinion); *id*. at 913-15 (Cochran, J., concurring) (concluding that a separate factual sufficiency standard no longer applies in criminal cases). When reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 902 n.19. The jury is the sole judge of the credibility of witnesses and the weight to be assigned to their testimonies, and we do not usurp this role by substituting our judgment for that of the jury. *Id*. at 899. When the record supports contradicting inferences, we presume the jury resolved any such conflicts in favor of the verdict. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex.

3

Crim. App. 2017).

As applicable in this case, the third-degree felony family-violence assault by strangulation or suffocation is defined in two related sections in Texas Penal Code Chapter 22, Assaultive Offenses. *See Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). "[A] person commits an offense if the person: ... intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." Tex. Penal Code Ann. § 22.01(a)(1). The base level of this offense is a Class A misdemeanor. *Id.* § 22.01(b); *see also Price*, 457 S.W.3d at 441. However, section 22.01(b)(2)(B) raises the offense to a third-degree felony if the assault is committed (1) against a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code, and (2) if "the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth[.]" Tex. Penal Code Ann. § 22.01(b)(2)(B); *see also Price*, 457 S.W.3d at 441.

Contrary to Appellant's assertion, there is sufficient evidence in the record before us to support his conviction. At trial, Complainant testified that she and Appellant had been in a dating relationship for almost a year and that on New Year's Eve 2016, an argument between her and Appellant about another women's underwear turned violent. She described, among other things, what Appellant did to her during the attack, how she felt during the attack, and what injuries she sustained:

- Appellant "grabs me by my hair and picks me up from my hair and drags me towards — like throwing me on top of the bed." It hurt when he grabbed her hair and dragged her.
- Appellant's hands "[s]eemed like all over me, my neck, pulling my

4

hair."

- "He's on top of me to where I'm pinned down because my arms, I can't fight back."

- "When he was squishing" Complainant, it "was hard to move or breathe."

- "There's nothing you can do. You're praying, crying, and screaming. You're trying to scream but it's so tight to where my partials were about to choke me. I have partials and they were going down my throat."

- "[Appellant] was covering my mouth so I couldn't yell. I couldn't breathe. I couldn't yell. He had the hand on my throat — he had one hand on my mouth. And as he pushed down, the partial went in my throat . . . . It cut my mouth inside."

- Whenever Appellant's hands applied pressure to the neck, "[a]ll I felt was a warmth running down my body, down my legs, this warmth. I[t] felt like stars. It got black. I couldn't breathe. . . . Fading away, like things going dark. Like you can't yell anymore, you can't move anymore. There's nothing left in your body."

- Complainant realized the warmth was in fact her urine.

- Complainant felt her face "was fat. It was getting swollen like your eyes want to pop out of your skull, your eardrums wanting to burst."

- "That's what I remember is dark, stars, and warmth, and no air and you're gasping. You're gasping and trying not to choke and stopping you from breathing when his hand is on your mouth."

- Complainant had difficulty speaking or standing when the police arrived because she was weak, her body was shaking and numb "from not having breath."

- Complainant's injuries right after the assault included her neck "hurting and throbbing", cuts on her lips and in her mouth, and her "hair was gone . . . pieces of [her] hair everywhere."

- In the days after the assault, there was bruising on her neck, her "lips got puffy," there was black under her eyes, and her ribs were bruised.

In addition to Complainant's testimony, the jury also heard from Officer Armstrong from the Rosenberg Police Department, who answered a call for a

5

"Disturbance between a male and a female in Room No. 207" at the Value Inn hotel. He testified that when he arrived at the hotel Complainant was very emotional, highly upset, seemed afraid, and was crying and shaking. Complainant told Officer Armstrong that Appellant, her boyfriend, "just assaulted" her. Officer Armstrong testified that Complainant told him Appellant "had punched her in the face numerous times, as well as pulled her by the hair and had strangled her, choked her." He also testified that Complainant told him "her circulation or breathing was impeded" when Appellant "was strangling her." Officer Armstrong observed that Complainant had "a busted lip" and "a dark spot around her right eye." He also observed that Complainant "had urinated on herself." He testified that Complainant told him that when Appellant "was choking her," she lost consciousness twice and urinated.

Officer Manriquez of the Rosenberg Police Department, who also answered the disturbance call at the Value Inn hotel, confirmed at trial that when he arrived at the scene Complainant was upset. Officer Manriquez testified he "observed that she had a fresh cut beneath her right eye and she had a swollen and busted upper lip."

Finally, forensic nurse examiner Tiffani Dusang with the Harris County Nurse Examiners testified at trial. She explained that "strangulation [can] be by either impeding breath that's moving through the trachea or by impeding the blood flow through the carotid [artery] or the jugular [vein]." She testified that the following symptoms are to be expected when a person's blood circulation is impeded by strangulation: loss of consciousness, dizziness, "feeling like you're going to pass out; heavy," "feeling like you're leaving your body." With regard to strangulation by impeding a person's breath, Dusang testified that the symptoms are the same as for strangulation by impeding blood circulation but additionally

6

include an inability to breathe, a hoarse voice, and difficulty or painful swallowing.

Dusang also explained that 85% of people who have been strangled had not sustained a sufficiently visible enough external injury that could be documented by photograph. She testified that "[i]n order to really determine if there's underlying neck injury, we recommend a CAT scan of the neck, that really highlights and looks at the vessels and structures carefully for injury." Dusang agreed that the following signs are "consistent with a person being strangled": the person cannot breathe, feels lightheaded or dizzy, urinates oneself, sees stars, loses consciousness, feels her face swelling, feels as if she is blacking out, is disoriented, is unable to speak or move, and has bruising on the neck area for a few days after the strangulation.

Reviewing the evidence before us in the light most favorable to the verdict, we conclude the evidence is sufficient to support the jury's finding that Complainant's breathing was impeded and that she suffered injuries to her neck, mouth, and face. The evidence is legally sufficient to support Appellant's conviction for family violence assault by impeding breath or circulation, and we therefore overrule Appellant's first issue.

## II.    Enhancement

In his second issue, "Appellant argues that there is a lack of attestation as required by, TEX. REV. CIV. STAT. ANN. art. 3731a, § 4 (Vernon 2016), in the Florida pen packets introduced by the State in support of the allegations contained in the enhancement paragraphs." Appellant's entire argument in support of his second issue is as follows:

> A review of the Florida pen packet (State's Exhibit P-3) used to enhance the Appellant appears to be a "mish-mash" of several offenses committed during two separate criminal episodes. As the

7

record reflects, during the punishment hearing, Det. Guerrero was not able to authenticate each Florida offense to a fingerprint.

The Appellant further adds that the Florida Department of Corrections affidavit submitted with the pen packets is woefully inadequate to allow the State of Texas to allow for habitual enhancement. Exhibit P-3 does not list the number of pages attached and there is no listing of what cause numbers, or offenses, are included in the pen packets.

During the punishment phase, the State offered as State's exhibit P-3 a Florida pen packet which included, among other things, judgments, sentences, fingerprints, and photographs of Appellant. Appellant objected to the admission of exhibit P-3 stating: "Our argument is that the affidavit from the Florida Department of Corrections does not comport with the legal requirements for Texas. There is no indication of how many pages are included in these records nor that it's [sic] kept in the common course of business in the State of Florida." Appellant did not state any Rule or other authority to support his argument.

The State responded to Appellant's argument as follows:

Judge, I believe Defense counsel is referencing what would be considered a business records affidavit, which is not the exception that I'm attempting to use right now. I'm attempting to use the exception to the hearsay rule, which is a certified copy of a public record, which I can approach for Your Honor to feel there is a raised State of Florida seal on the front page of these documents that would suffice for a certified copy of public records.

The trial court overruled Appellant's objection and admitted the pen packet.

On appeal, Appellant contends there is a "lack of attestation as required by, TEX. REV. CIV. STAT. ANN. art. 3731a, § 4". However, Article 3731a section 4 was repealed many years ago. *See* Act of Aug. 26, 1985, 69th Leg., R.S., ch. 685, § 9(b), 1985 Tex. Gen. Laws 5136, 5141. The requirements for authentication are found in Article IX of the Texas Rules of Evidence. *See* Tex. R. Evid. 901, 902, 903. On appeal, Appellant is required to present a brief that contains a "clear and

8

concise argument for the contentions made, with appropriate citations to authorities and to the record." *See* Tex. R. App. P. 38.1(i). Appellant has provided neither citations to the record nor appropriate authorities to support his argument. *See id*; *see also Belle v. State*, 543 S.W.3d 871, 875 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Therefore, Appellant has waived his issue.

Additionally, the record indicates the trial court admitted the pen packet pursuant to Texas Rule of Evidence 902(4) as offered and argued by the State. *See* Tex. R. Evid. 902(4) (providing that certified copies of public records are self-authenticating if listed requirements are met). However, Appellant did not object or otherwise challenge the pen packet's admission under Rule 902(4) in the trial court; instead, he objected to the admission of the pen packet because the affidavit accompanying the pen packet did not show "how many pages are included in these records nor that it's [sic] kept in the common course of business in the State of Florida", indicating a challenge under Rule 902(10) (Business Records Accompanied by Affidavit). Moreover, Appellant fails to challenge admission of the pen packet on appeal as not comporting with Rule 902(4) and instead frames his argument as an attack on the admission of the pen packet under Rule 902(10). Therefore, Appellant's second issue fails to attack the ground upon which the pen packet was admitted and presents nothing for our review. *See* Tex. R. App. P. 33.1(a). Accordingly, we overrule Appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.

/s/    Meagan Hassan
Justice

Panel consists of Justices Bourliot, Hassan, and Poissant.
Publish — Tex. R. App. 47.2(b).